57337. JIM WALTER CORPORATION et al. v. WARD et al.

McMURRAY, Presiding Judge.

We are concerned here with two shell structures or "prefabricated houses" which were constructed in 1969 on two tracts of land in Houston County, Georgia. One of these properties was owned by Willie Ward and the other was owned by Bertha Williams and Johnnie Mae Williams, jointly. Both Willie Ward and Bertha Williams contend that they did not purchase and did not want these shell dwellings constructed on their respective properties.

In 1969 a transfer of property was recorded from Bertha and Johnnie Mae Williams to Roosevelt Williams and the separate loan deeds and notes were made from both Roosevelt Williams as to one property and Willie

Ward, Sr. as to the other, to Jim Walter Corporation, a Florida corporation. Other papers were also allegedly signed by these individuals as to the purchase and financing of these prefabricated structures, as well as the obtaining of hazard insurance from Best Insurors, Inc. in favor of Jim Walter Corporation. Subsequent thereto, for value received, the right, title and interest of Jim Walter Corporation in these loans and security deeds were transferred to Mid-State Homes, Inc., another Florida corporation. Jim Walter Corporation owns all of the stock of Best Insurors, Inc., and Mid-State Homes, Inc.

On June 21, 1978, Willie Ward and Bertha Williams brought this action involving conspiracy, fraud and forgery in the State Court of Bibb County in two separate counts (one as to Willie Ward and one as to Bertha Williams) against Jim Walter Corporation, Mid-State Homes, Inc., Freda Herndon, Pinky Corse, James Locke and Paul M. Shelton.

Count 1 alleges, with reference to plaintiff Willie Ward, that "the defendants, tacitly and by indirection, confederated together and combined and conspired and made common cause to perpetuate frauds" in attempting to sell plaintiff Ward a prefabricated structure for use on property described therein belonging to Ward, alleged to be blind and illiterate. Ward alleges and contends that he did not want the shell structure but that it was left there while he was absent from home. He contends that defendant Corse "working in combination with some of the other conspirators" forged his name on a security deed evidencing a purported indebtedness to the defendant Jim Walter Corporation in the amount of $10,440 which was unknown to him. Other papers were also alleged to have been forged with reference to this transaction. In furtherance of the conspiracy the fraudulent deed was recorded and thereafter fraudulently conveyed, sold and assigned and transferred to defendant Mid-State Homes, Inc. Plaintiff Ward further alleges: he had never heard of a security deed and did not know the meaning of the term. He did not have the slightest suspicion that his name had been forged on any such instrument but that the defendants and their agents thereafter threatened him with information that they possessed the power and

authority to sell his land on the courthouse steps and throw him and his family off of it; he has lived in constant fear of the defendants since about November 1, 1969, and as a result of defendants' continuous threats of eviction has made payments to them in an amount not less than $7,663. Sometime in June, 1977, he learned of the forged instruments and has not paid any of the defendants anything since learning of same. Attempts were then made on or about June 10, 1978, by the defendant Paul M. Shelton to get him to execute a new security deed and note then and there presented to him by defendant Shelton who advised him that the defendants knew the original papers were forgeries. Plaintiff Ward contends he tendered back to defendants, Jim Walter Corporation and Mid-States Homes, Inc., the structure placed on his premises in 1969. He contends he is entitled to recover of the defendants $7,663, this being the amount in which he has been defrauded by reason of fraudulent, illegal and oppressive conduct; and in addition, he seeks punitive damages in the amount of $150,000 to deter the defendants from ever again repeating the trespass.

In Count 2 plaintiff Bertha Williams alleges that the defendants "tacitly and by indirection, confederated together and combined and conspired and made common cause to perpetrate frauds" upon her in placing a similar structure on a small tract of land that she owned along with Johnnie Mae Williams. She alleges that one of the defendants, while unknown to her, put a nine-year-old child up to forging the names of Johnnie Mae Williams and Bertha Williams on a warranty deed conveying their property to one Roosevelt Williams. In furtherance of the conspiracy the fraudulent deed was attested as signed in the presence of a notary public in order that it be placed of record, and the fraudulent deed was subsequently recorded. The defendants then caused the minor child to forge the name of Roosevelt Williams on the security deed which was also fraudulently attested as executed by a notary public thus enabling it to be placed of record. The defendants then caused said fraudulent security deed to be recorded and thereafter transferred by defendant Jim Walter Corporation to defendant Mid-State Homes, Inc. The shell home was then hauled on her property against

her wishes and the same name of Roosevelt Williams was then forged as to written authorization for the purpose of fire insurance on the structure. Plaintiff Williams then alleges she has been constantly pressured and harassed since 1969 to pay for said structure and for heavy fire insurance premiums by certain agents of the defendants, verily believing that the defendants had the power and authority to evict her and remove her from her premises. As a result of her fear that the defendants would carry out their threats to do this she has paid them a sum of not less than $4,203.60. She alleges that she did not learn of the forged instruments until shortly before the filing of this lawsuit and she has not paid the defendants anything since learning of the fraud. Plaintiff Williams contends she has tendered back to the defendants, Jim Walter Corporation and Mid-State Homes, Inc., the structure placed on her premises in 1969 and that she is entitled to recover from the defendants $4,203.60 which is the amount that she has been defrauded by them. She also seeks, because of fraudulent, illegal and oppressive conduct, to recover punitive damages in the amount of $150,000 to deter defendants from ever again repeating the trespass. Service was not accomplished against all of the individual defendants but was obtained against the two corporations.

A trial was held after the defendants answered generally denying the claims but admitting in their answer and in discovery proceedings the placing of the structures on the property as well as the corporate connection between Best Insurors, Inc., Mid-State Homes, Inc., and Jim Walter Corporation. A jury verdict was returned in favor of plaintiff Ward (in Count 1) against the defendants Jim Walter Corporation, Mid-State Homes, Inc., Freda Herndon and Paul M. Shelton in the amount of $7,663 as actual damages and $200,000 as punitive damages. The jury also returned a verdict in favor of plaintiff Bertha Williams (in Count 2) of $4,203.60 as actual damages and $200,000 as punitive damages against the same defendants. Two separate judgments were entered as to Count 1 and Count 2 generally following the verdict. The defendants appeal. *Held:*

1. The defendants first enumerate error that the statute of limitations of four years after the right of action accrues had occurred since the transactions upon which both plaintiffs base their claims took place in 1969, more than eight years prior to the filing of the complaint, and the trial court erred in declining to grant defendants' motions for directed verdict. Defendants further contend that no evidence has been shown for suspending the running of the statute of limitations as to either of the plaintiffs and certainly no later than the end of 1973. If there be any evidence authorizing the jury to find that the statute of limitations was tolled due to the lack of knowledge of the plaintiffs, that is, of that character which involves moral turpitude, and has the effect of debarring or deterring action, the trial court did not err in denying defendants' motions for directed verdict. See Code Ann. § 3-807; *Anderson v. Foster,* 112 Ga. 270 (1) (37 SE 426); *Ponder v. Barrett,* 46 Ga. App. 757 (2) (169 SE 257). Compare *Webb v. Lewis,* 133 Ga. App. 18, 21 (2) (209 SE2d 712). The evidence authorized the jury to conclude that the original fraud (actual fraud involving moral turpitude) was of a nature to debar and deter the plaintiffs from their actions, being ignorant and illiterate persons; and tolled the statute of limitations until discovery of the fraud. See *Brown v. Brown,* 209 Ga. 620, 622 (7) (75 SE2d 13); *Mullins v. Barrett,* 204 Ga. 11, 15 (48 SE2d 842); *Smith v. Holman,* 117 Ga. App. 248, 249 (2) (160 SE2d 533); *Larkins v. Boyd,* 205 Ga. 69, 72 (52 SE2d 307); *Jones v. Spindel,* 239 Ga. 68, 69-70 (1) (235 SE2d 486). Compare *Austin v. Raiford,* 68 Ga. 201; *Barrett v. Jackson,* 44 Ga. App. 611 (162 SE 308); *Middleton v. Pruden,* 57 Ga. App. 555 (196 SE 259). The evidence here fails to show that the fraud was not continuing in nature from the time the frauds were committed until the lawsuit was filed, and the trial court did not err in refusing to direct the verdict. The testimony of both plaintiffs even though they suspected something was wrong as to their ignorance and illiteracy and inability to read and write fails to show that they lacked due diligence to discover that a fraud had been exercised over them. The question of the plaintiffs' exercise of reasonable diligence is ordinarily a jury question. *Piedmont Pharmacy, Inc. v.*

*Patmore,* 144 Ga. App. 160 (240 SE2d 888).

2. The trial court did not err in charging the jury that "[i]n determining whether the plaintiffs exercised the required degree of diligence to discover the alleged fraud, you are authorized to consider all the facts and circumstances of the case including the mental capacity and education of the plaintiffs." There was evidence that the plaintiffs were ignorant and uneducated, one of them almost blind, and it can be said to be a jury issue as to whether they had the capacity to contract or were incompetent due to their physical and mental condition. See *Piedmont Pharmacy, Inc. v. Patmore,* 144 Ga. App. 160, supra.

3. The request to charge "that the fact that the defendant may have been guilty of some fraud that gave rise to a cause of action does not prevent the running of the statute of limitations. In order for the plaintiff to be excused from bringing the action within four years from the time of the alleged wrong, you must find that the defendant did some fraudulent act which prevented the plaintiff from discovering the wrong done" does not accurately state the rules laid down in *Webb v. Lewis,* 133 Ga. App. 18, supra; *Barrett v. Jackson,* 44 Ga. App. 611, supra; and *Middleton v. Pruden,* 57 Ga. App. 555, supra. The true rule is that the original fraud may or may not be of a type which prevents the running of the statute of limitations. The court did charge the exact language of Code Ann. § 3-807. The evidence shows that the original fraud in 1969, including forgeries, affirmative acts of concealment and of actual fraud involving moral turpitude, was sufficient to toll the statute of limitations. In *Jones v. Spindel,* 239 Ga. 68, supra, it has been held the recording of such instruments as deeds is not conclusive as to notice but is only a circumstance for consideration in connection with the question of diligence in discovering the fraud. See also *Frye v. Commonwealth Invest. Co.,* 107 Ga. App. 739 (131 SE2d 569); s.c. *Commonwealth Invest. Co. v. Frye,* 219 Ga. 498 (134 SE2d 39); *Mullins v. Barrett,* 204 Ga. 11, 15, supra. In addition, the jury might be authorized to find that there was evidence of constant harassment, threats and intimidation upon these illiterate, incompetent and ignorant plaintiffs. See in this

connection *Broughton v. Winn,* 60 Ga. 486; *Reeves v. Williams & Co.,* 160 Ga. 15 (1) (127 SE 293); *Larkins v. Boyd,* 205 Ga. 69, supra; *Hickson v. Bryan,* 75 Ga. 392, 397; *Smith v. Holman,* 117 Ga. App. 248, 249, supra. The question of mental capacity is a question of fact to be determined by the jury. *Jones v. Hogans,* 197 Ga. 404, 410 (4) (29 SE2d 568); *McCraw v. Watson,* 242 Ga. 452 (1) (249 SE2d 202).

4. The trial court did not err in allowing evidence of similar fraudulent transactions involving other ignorant and illiterate persons to be allowed in evidence to show the fraudulent intent and injustice of the defendants. This evidence showed the defendants had been engaged in similar fraudulent schemes, and the evidence was admissible to show fraudulent intent in the transaction in controversy. *Deckner-Willingham Lumber Co. v. Turner,* 171 Ga. 240, 244 (155 SE 1); *Ballard v. Turner,* 147 Ga. App. 584, 585 (2) (249 SE2d 637); *Grainger v. Jackson,* 122 Ga. App. 123, 128 (176 SE2d 279).

5. The plaintiffs sought to recover as actual damages respective amounts they had paid in based upon the alleged fraud of the defendants in defendants' own records, as well as answers to interrogatories which were read into the record and were allowed without objection. It cannot be said that the plaintiffs failed to prove any actual damages. It was for the jury to determine whether or not the parties had been defrauded. See *King v. Towns,* 102 Ga. App. 895 (2), 901 (118 SE2d 121).

6. The defendants next contend that the trial court erred in failing to give the jury any instructions whatsoever regarding the measure of actual damages citing *Ryder Truck Rental, Inc. v. Gianotos,* 113 Ga. App. 81, 85 (147 SE2d 448), and that even if the defendants requested no such charge it was substantial error, citing *City of Macon v. Douglas,* 45 Ga. App. 798 (2) (165 SE 922); *Mayor &c. of Washington v. Harris,* 144 Ga. 102 (2) (86 SE 220). It cannot be said that the trial court gave no measure of actual damages whatsoever. However, under § 17 of the Appellate Practice Act of 1965, see new Code Ann. § 70-207 (Ga. L. 1965, pp. 18, 31; 1966, pp. 493, 498; 1968, pp. 1072, 1078), the defendants made no complaint when given a suitable opportunity to make objections to the

charge as given and they made no objection that the court had failed to charge a proper measure of damages. We do not consider the alleged error was so substantial and harmful as a matter of law to require reversal. See *Fleet Transport Co. v. Cooper,* 126 Ga. App. 360 (2) (190 SE2d 629); *Christiansen v. Robertson,* 237 Ga. 711, 712 (229 SE2d 472); *Durrett v. Farrar,* 130 Ga. App. 298, 306 (203 SE2d 265). The error must be blatant, apparent and prejudicial and a gross miscarriage of justice attributable to it is to result in order to reverse, that is, the error must be substantially harmful as a matter of law. See *Sullens v. Sullens,* 236 Ga. 645 (224 SE2d 921). Under the circumstances of this case any alleged error in the instructions was not so prejudicial as to result in a gross miscarriage of justice which would bring the error within the substantial error rule. See *Newcomb v. Pattillo,* 119 Ga. App. 495 (3) (167 SE2d 665).

7. The claims of the defendants as to error with reference to the punitive damages is that the trial court committed error by submitting to the jury and charging the jury on the matter of punitive damages because the plaintiffs proved no actual damages. As ruled above, the plaintiffs did prove actual damages, and this alleged error is not meritorious. See *Champion v. Martin,* 124 Ga. App. 275 (183 SE2d 571).

8. Defendants contend that undue bias and prejudice is clearly shown because the punitive damages awarded exceeded the entire amount sought in the complaints by at least $100,000. But this is not the question raised in the enumerations of error. We find no enumeration contending the award of punitive damages was excessive. One may not raise one. point in their enumerations of error and argue another point in the brief. See *Madden v. Keith,* 146 Ga. App. 13, 15 (6) (245 SE2d 350); *Wall v. Rhodes,* 112 Ga. App. 572 (1), 573 (145 SE2d 756); *Sumners v. State,* 137 Ga. App. 493, 494 (224 SE2d 126) and cits. However, the award of punitive damages was not shown here to be excessive as a matter of law. Code § 105-2015 provides that the question of damages being one for the jury the court should not interfere unless the damages are either so small or so excessive as to justify the inference of gross mistake or

undue bias. We do not consider the evidence here, when considered in connection with all the facts and circumstances, to shock the moral sense, that is appear exorbitant, to be flagrantly outrageous and extravagant. See *Redwing Carriers, Inc. v. Knight,* 143 Ga. App. 668, 677 (12) (239 SE2d 686); *Realty Bond &c. Co. v. Harley,* 19 Ga. App. 186, 187-188 (91 SE 254). This court cannot find that the jury's verdict infers bias and prejudice or that the amount is so excessive as to demand a reversal. Under such circumstances the measure of punitive damages is within the enlightened conscience of the jury. See *King v. Towns,* 102 Ga. App. 895, 904 (5), supra; *Investment Securities Corp. v. Cole,* 57 Ga. App. 97 (3), 101 (194 SE 411); *Melton v. Bow,* 145 Ga. App. 272, 274 (4) (243 SE2d 590).

9. It cannot be said that the plaintiffs waived whatever claims they had against the defendants by living in the houses, making regular monthly payments on them, and in failing to rescind a contract because in this case there was no contract and actual fraud was involved amounting to moral turpitude as shown by the evidence.

*Judgment affirmed. Deen, C. J., and Birdsong, J., concur. Shulman, J., not participating.*

ARGUED MARCH 7, 1979 — DECIDED JUNE 5, 1979 — REHEARING DENIED JUNE 28, 1979 —

*Edwin F. Hunt, Groover & Childs, Denmark Groover, Jr., Sutherland, Asbill & Brennan, D. Robert Cumming, Jr., Thomas A. Cox,* for appellants.

*James, Ship & Wilcox, John E. James, Tommy Day Wilcox, O'Neal, Stone & Brown, H. T. O'Neal, Jr., Manley F. Brown, Alston, Miller & Gaines, G. Conley Ingram, Dana D. Lamer,* for appellees.