66041. JAMES et al. v. PENNSYLVANIA GENERAL INSURANCE COMPANY.

POPE, Judge.

Appellants, William Oscar James and his son Toby Lynn James, brought this action against appellee insurance company and Crowell & Company, Inc., the agent through which the subject policy was obtained. Appellant William Oscar James was issued an "automobile combination family policy" by appellee which was in effect for the period February 23, 1981 to August 23, 1981. Pursuant to the terms of the policy, coverage with respect to "owned automobiles" as described therein was provided for Mr. James, the named insured, and residents of his household. During this period, the named insured's household consisted of Mr. James, his wife, his son (appellant Toby) and his daughter. Three vehicles were described in the policy, including a 1980 Toyota Hilux. All premiums had been paid and the premium charged upon the aforementioned Toyota was based upon Toby's being listed as the principal operator of this vehicle, as well as his age, sex, marital status, and the use and type of

the vehicle. Although this Toyota was titled in the name of Mr. James, the premium was not based upon titled ownership.

On June 1, 1981 Mr. James transferred title to the 1980 Toyota Hilux to Toby by certificate of title. Appellee was not notified of this transfer. On August 1, 1981 Toby was involved in an automobile accident and coverage was sought by Mr. James and son Toby under the liability and collision portions of the subject insurance policy; appellee denied coverage. The trial court granted appellee's motion for summary judgment, holding that such transfer of title prior to the accident without appellee's consent voided the policy. The case remains pending as to Crowell & Company, Inc., while appellants bring this appeal from the foregoing order of the trial court.

The subject insurance policy provided that "[a]ssignment of interest under this policy shall not bind the company [appellee] until its consent is endorsed hereon. . . ." Such a no-assignment clause is explicitly permitted by statute in this state. OCGA § 33-24-17 (formerly Code Ann. § 56-2423). Appellee argues that the trial court correctly found that Mr. James' voluntary transfer of title to the subject vehicle to his son Toby voided the coverage thereon because appellee did not consent to said transfer. Indeed, "[t]his court has held that '(e)ither transfer of title to property or transfer of the policy of insurance without the consent of the insurer voids the policy. *Curtis v. Girard Fire &c. Co.,* 190 Ga. 854 (11 SE2d 3) [(1940)]; *Aldridge v. Dixie Fire &c. Co.,* 223 Ga. 130 (153 SE2d 723) [(1967)].' *Langley v. Pacific Indem. Co.,* 135 Ga. App. 29, 31 (217 SE2d 369) [(1975)]. Although the *Curtis* and *Aldridge* cases, cited by the *Langley* court, were controlled by former Code Ann. § 56-825, of the 1933 Georgia Code, the *Langley* case was not. However, in following the result reached in the *Curtis* and *Aldridge* cases, the *Langley* court reasoned that 'insurance policies are of the nature of personal contracts. The insurer is selective of those risks which [revolve] around the character, integrity, and personal characteristics of those whom they will insure.' Id., p. 30. This reasoning is also reflected in [OCGA § 33-24-7 (formerly Code Ann. § 56-2409)]." *Republic Ins. Co. v. Chapman,* 146 Ga. App. 719, 719-20 (247 SE2d 156) (1978).

As was implied in *Republic Ins. Co. v. Chapman,* supra, this court will utilize a risk-focused analysis in resolving an issue such as that presented in this case, viz., whether Mr. James' voluntary transfer of title to the subject vehicle without appellee's consent voided the coverage thereon. See Imperial Enterprises, Inc. v. Fireman's Fund Ins. Co., 535 F2d 287, 292 (5th Cir. 1976). "The object of policy provisions against alienation or change of interest or title is ordinarily to provide against changes in ownership which might supply a motive to destroy the property, or might lessen the interest

of the insured in protecting and guarding it. Consequently and generally, therefore, a transfer which tends to produce such an effect will avoid the policy if by reasonable construction such a transfer is within the terms of the provision, while on the other hand, dealings with the property which are not calculated to produce such an effect do not, by reason of such provisions, avoid the policy." 44 AmJur 2d 103, Insurance, § 1144.

1. The record discloses that Mr. James' voluntary transfer to his son Toby of the certificate of title to the 1980 Toyota Hilux was made without the reservation of any lien or security interest in himself. OCGA § 33-24-4(b) (formerly Code Ann. § 56-2405(1)) provides: "No insurance contract on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having, at the time of the loss, an insurable interest in the things insured." An "insurable interest" is defined as "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." OCGA § 33-24-4(a) (formerly Code Ann. § 56-2405(2)). Since the record discloses no such economic interest in Mr. James in the subject Toyota at the time of the accident in this case, summary judgment was properly entered in favor of appellee as to appellants' claim for reimbursement pursuant to the property damage provision of the policy. See *Great American Ins. Co. v. Lipe,* 116 Ga. App. 169, 172 (2a) (156 SE2d 490) (1967). See generally *American Reliable Ins. Co. v. Woodward,* 143 Ga. App. 652 (1) (239 SE2d 543) (1977). See also *Thames v. Piedmont Life Ins. Co.,* 128 Ga. App. 630 (1) (197 SE2d 412) (1973).

2. The undisputed facts of record show that Mr. James furnished and maintained the 1980 Toyota Hilux for the regular use of himself and his household, "for their pleasure, comfort and convenience." However, the primary user of this vehicle was his son Toby, a resident member of the household at all times pertinent to this case. The subject insurance policy was entitled "Automobile Combination Family Policy" and provided broad liability coverage to persons insured thereunder. The policy provided inter alia that persons insured "with respect to the owned automobile" included "the named insured and any resident of the same household." The policy defined "owned automobile" as meaning "a private passenger ... or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded." By contrast, a "non-owned automobile" was defined as "an automobile . . . not owned by or furnished for the regular use of either the named insured or any relative. . . ." There was no policy requirement that the "owned automobile" must be titled in the name of the named insured.

Compare *Brooker v. American Ins. Co.,* 65 Ga. App. 713 (16 SE2d 251) (1941).

"In the absence of a provision in an insurance policy to the contrary, a change of title to the property insured, in whole or in part, does not avoid the policy if at the time of a loss the insured has an insurable interest, but an alienation of the insured property will end the policy as to the insured if he retains no further interest in the property. This is in accordance with the rule that an insured must have an insurable interest in the property insured at the time of loss." 44 AmJur2d 99-100, Insurance, § 1141. See Division 1, supra. "The insurable interest required for automobile liability insurance is to be found in the interest that the insured has in the safety of those persons who may maintain, or the freedom from damage of property which may become the basis of, suits against him in case of their injury or destruction. Potential liability from the use of a motor vehicle, sufficient to create an insurable interest, may be vicarious, and such an interest thus may arise where it is contemplated that the vehicle may be driven by a servant or agent of the insured, or where, for some other reason, the insured may be vicariously liable for injuries caused through the use of the vehicle. No legal or equitable interest in the insured vehicle as property is necessary to support an insurable interest regarding liability insurance. Hence, the right to recover does not depend upon the insured's being the holder, in fact, of either a legal or equitable title in the automobile, but upon whether he is charged at law or in equity with the liability against which the insurance is taken out." (Paragraph indicia omitted.) 7 AmJur2d 502-3, Automobile Insurance, § 44; Annot., 1 ALR3d 1193, § 3. See *Great American Ins. Co. v. Lipe,* supra at (2b). Cf. *Hardeman v. Southern Home Ins. Co.,* 111 Ga. App. 638, 644 (142 SE2d 452) (1965).

Under the facts in this case it is entirely likely Mr. James may become subjected to suit and resultant vicarious liability under the "family car doctrine" or "family purpose doctrine," i.e., on the theory that his son Toby was acting as his "agent" at the time of the subject accident. See, e.g., *Sledge v. Law,* 113 Ga. App. 746 (149 SE2d 758) (1966); *Hexter v. Burgess,* 52 Ga. App. 819 (4,5) (184 SE 769) (1936); cf. *Calhoun v. Eaves,* 114 Ga. App. 756 (152 SE2d 805) (1966). We conclude, therefore, that Mr. James had an insurable interest as to liability coverage for the 1980 Toyota Hilux, notwithstanding his transferring the title to that vehicle to his son.

Moreover, under the facts in this case the transfer of title resulted in no increase of risk to appellee as to liability coverage under the subject policy. "It is elementary that an insurance company is discharged from liability under its policy if the risk is materially increased. . . . [A] change in use which materially increases the hazard

of the insurance releases the insurance company from liability on a loss directly resulting as a consequence of such increase in risk." *Wallace v. Va. Surety Co.,* 80 Ga. App. 50, 52-3 (55 SE2d 259) (1949). The transfer of title to the 1980 Toyota Hilux was within the household covered by the policy and its use as a family vehicle, son Toby being the principal operator, remained the same.

" ' "An insurance policy is a contract of indemnity for loss, and the intention of the parties, if it can be ascertained, must determine the sense in which the terms employed are used. This intention of the parties must be sought for in accordance with the true meaning and spirit in which the agreement was made and expressed in the written instrument, and the ordinary and legal meaning of the words employed must be taken into consideration." [Cit.]' " *Wallace v. Va. Surety Co.,* supra at 52. "Since insurance policies are contracts of adhesion penned by the insurer, when ambiguity is present, construction of the policy is in favor of the insured, although it must not be unreasonable or strained. [Cits.] Thus, if two or more reasonable interpretations are possible, the reading most favorable to the insured is adopted. [Cit.] A crucial principle is that insurance policies are construed so as to avoid forfeitures, [cits.], and to provide coverage[.] [Cit.]" *Imperial Enterprises, Inc. v. Fireman's Fund Ins. Co.,* supra at 290. Applying these general principles of law to the facts in this case, "it is our conclusion that the no-assignment clause should not be applied ritualistically and mechanically to forfeit coverage in these circumstances." Id. at 293. Accordingly, the trial court erred in granting summary judgment to appellee as to liability coverage under the subject policy. Accord, Home Ins. Co. v. Randolph, 106 N. J. Super. 438 (256 A2d 81) (1969). Compare Penn. Nat. &c. Ins. Co. v. State Farm &c. Ins. Co., 605 SW2d 125 (Mo. 1980).

*Judgment affirmed in part; reversed in part. Quillian, P. J., and Sognier, J., concur.*

DECIDED JULY 12, 1983.

*J. Richard Dunstan,* for appellants.
*William R. Coleman, Jr., William C. Reed, J. Arthur Davison,* for appellee.