69484, 69485. FIDELITY & DEPOSIT COMPANY OF
MARYLAND v. SUN LIFE INSURANCE COMPANY
OF AMERICA; and vice versa.
(329 SE2d 517)

BIRDSONG, Presiding Judge.

Fidelity & Deposit Company of Maryland, defendant below, brings this appeal from a grant of summary judgment to the plaintiff, Sun Life Insurance Company of America. Sun Life obtained a "Life Insurance Companies Blanket Bond" from Fidelity which included coverage for "[a]ny loss through any dishonest or fraudulent act of any of the Employees or General Agents of the Insured. . . ." Sun Life, a life insurance company, signed a contract of employment with Eduardo Gilbert, as a general agent, to solicit applications for life insurance on behalf of Sun Life. On the same date, Sun Life signed an "Agreement for Advance of Commissions" in which Gilbert was to receive in "advance . . . 85% of the first-year commissions upon anticipated first-year premiums."

During the period of his employment by Sun Life, from about June 1, 1979 to January, 1980, Gilbert was an active insurance agent, submitting 315 applications for life insurance policies to Sun Life, together with the first premium. In accordance with their agreement, Sun Life advanced to Gilbert 85% of the first year commissions, based upon the anticipated first year premiums. A vice-president of

Sun Life began to monitor Gilbert's commission "to determine whether there appeared to be any reason, apart from the increasing commission balance, to take a closer look." Subsequent investigation revealed that Gilbert could not be located and an internal audit by Sun Life showed that only eight of the 315 applications for insurance were valid and the remaining 307 were either fictitious persons or individuals who had not made application for insurance. Sun Life's total loss was $80,885.64. Application for reimbursement to Fidelity was denied. This action resulted, and the trial court granted Sun Life's motion for summary judgment. *Held:*

1. Fidelity denied liability upon three grounds: (1) Section 3 of its bond excluded from coverage losses resulting from any advance of commissions, (2) Sun Life did not commence suit within the contractual period of limitations, and (3) Sun Life did not comply with the notice requirement of the bond. We need address only the issues of whether the loss came within the exclusion, and whether this action was filed within the contractual limitation of time.

Section 3 of the exclusion portion of the bond provides: "Collections — Advances — Commissions. . . . The Underwriter shall not be liable for loss sustained by the Insured through failure of any . . . General Agent of the Insured . . . to repay monies advanced by the Insured, except monies advanced for traveling expenses, claim settlements, claim expenses and other expenses of the Insured and dishonestly converted by such Representative. . . ." It is clear that the greater portion of the money advanced to Gilbert was under the agreement for advance of commissions. It is equally clear that a loss incurred "through failure of any Representative [including a General Agent] to repay monies advanced by the Insured" except expenses incident to traveling, claim settlements, and general operational expenses, was excluded by the contract.

Sun Life argues that advance payments of commissions to a general agent are "other expenses of the insured" and are not within the exclusion. They also contend that the latter part of Section 3 of the exclusionary portion of the bond recognizes coverage for " 'actual advance' of a commission to the agent . . ." where the agent converts advanced commissions. These arguments are not persuasive.

The latter portion of Section 3 provides: "The Underwriter shall not be liable . . . as to premiums for more than the amount actually collected and retained by such Representative after deducting the entire amount of all commissions to which such Representative . . . would have been entitled had there been no default . . . provided that such deduction of commissions shall not be applicable to a case where such Representative, in consideration of an actual advance made by the Insured, is obligated and has agreed to account for and pay over such commissions to the Insured." "Ambiguity is not to be

created by lifting a clause or portion of the contract out of context." *Dickert v. Allstate Ins. Co.*, 121 Ga. App. 760, 761 (175 SE2d 98). This subsection relates only to "such deduction of commission" where the agent is collecting premiums from the insured and retains such premiums. Thus, the insured's claim would be limited to that portion retained by the agent after the insurance company deducted the amount of his commission, except that if the agent had received advance commissions, he would be obligated to repay that amount plus the amount computed under the first clause. Because this subsection is restricted to claims involving collection and retention of premiums by an agent, it is inapplicable to the factual predicate of the instant claim.

Competent parties are free to choose and insert whatever provisions they desire in a contract, unless prohibited by statute or public policy. *Hall v. Skate Escape*, 171 Ga. App. 178 (319 SE2d 67). While a policy of insurance is to be construed liberally in favor of the object to be accomplished and its provisions construed against the insurer, where a part is susceptible of two constructions, that interpretation will be adopted that is most favorable to the insured. Yet a contract of insurance should follow the cardinal rule of construction so as to carry out the true intention of the parties, and their rights are to be determined by the terms of the contract. Its language should receive a reasonable construction and not be extended beyond what is fairly within its plain terms. Where the language fixing the extent of coverage is unambiguous, as here, and but one reasonable construction is possible, this court must enforce the contract as written. *Pilot Life Ins. Co. v. Morgan*, 94 Ga. App. 394, 398 (94 SE2d 765); accord *Midland Nat. Ins. Co. v. Wright*, 117 Ga. App. 208, 209 (160 SE2d 262). This court has no more right, by a strained construction, to make an insurance policy more beneficial by extending coverage not contracted for, than they would have to increase the amount of coverage. *Standard Guaranty Ins. Co. v. Davis*, 145 Ga. App. 147, 151 (243 SE2d 531). " ' "In an action to collect on an insurance policy, the insured must show that the occurrence was within the type of risk insured against to make a prima facie case." ' " *Pennsylvania Millers Mut. Ins. Co. v. Heule*, 140 Ga. App. 851, 852 (232 SE2d 267). It is the function of an appellate court to construe the contract as written, and we will not, by construction, create a liability not assumed by the insurer, nor delete a coverage contracted for, and we are not authorized to make a new contract for the parties, or one different from that plainly intended. *Pilot Life Ins. Co.*, supra, p. 399.

The exclusion of coverage was unequivocal that monies advanced to a general agent by the insured as commissions was not included in the risk insured. Such advance was in the nature of a loan and was to be repaid from future premium receipts. Failure of the insured's gen-

eral agent to repay such advance of commissions was not within the coverage contemplated by the parties. *American Travelers Life Ins. Co. v. Travelers Indem. Co.*, 201 NE2d 46 (3) (Ind. 1964). The trial court erred in granting summary judgment to the plaintiff.

2. The trial court did not err in failing to grant summary judgment to Fidelity. Not excluded from coverage was advance of funds by the insured to the general agent for "travel expenses, claim settlements, claims expenses and other expenses of the Insured. . . ." Sun Life established its damages by the affidavit of its vice-president, general counsel, and secretary. He stated that the loss sustained by the insured was "$80,885.64, representing commissions paid and monies advanced for office expense allowance and related items." Our holding herein has ruled out only coverage for that amount "representing commissions paid. . . ."

3. Fidelity contends that Sun Life's claim is barred by the policy limitation of two years in which an action may be brought for recovery of an insured loss. A contract limitation of time in which an action may be brought against an insurer is valid and binding on the parties when not in contravention of any statute or public policy. *Commercial Union Ins. Co. v. F. R. P. Co.*, 172 Ga. App. 244 (322 SE2d 915).

Because a vice-president of Sun Life was concerned about the large number of policies of insurance being sold by the new agent, Gilbert, a regional director of Sun Life wrote Gilbert a letter setting up a meeting on December 18, 1979. Gilbert did not respond to the letter and did not show up for the meeting. Beginning on December 19, the regional director made four trips to Gilbert's office and his home but was unable to locate him. On January 3, 1980, the regional director found that Gilbert's home and office were vacant, except that his home had "stacks of bills." On January 4, it was determined that the county marshal, the city police, and the sheriff were looking for Gilbert. Sun Life retained a private investigator in an attempt to locate the missing agent. Gilbert was never found. On January 8, Sun Life personnel started making a partial check on a few of Gilbert's policyholders. It was discovered that some policies were made out to fictitious persons and the people contacted said they had not taken out insurance with Gilbert. Sun Life then conducted an internal audit, beginning in February 1980, and lasting until May 1980. This audit showed a loss of $80,885.64, consisting of advance commission and office expenses.

Fidelity argues that the contract limitation on legal action ran not later than January 18, 1982, two years from the date Sun Life knew that Gilbert was missing, the police were looking for him, and a partial check of his policyholders showed fictitious persons and people who did not insure with Sun Life. Sun Life contends that although

they suspected they had probably sustained a loss, they were unsure as to the amount and the statute did not begin to run until May 1980, when they determined they had suffered a loss of $80,885.64.

" 'When the question is raised as to whether an action is barred by a statute of limitations [contract limitation in the instant case], the true test to determine when the cause of action accrued is " 'to ascertain the time when the plaintiff could first have maintained his action to a successful result. . . .' " *Webb v. Lewis*, 133 Ga. App. 18, 19-20 (209 SE2d 712); accord *Hoffman v. Insurance Co. of North America*, 241 Ga. 328, 329 (245 SE2d 287); *Limoli v. First Ga. Bank*, 147 Ga. App. 755, 757 (250 SE2d 155). "Mere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitations [cit.], for a plaintiff must exercise reasonable diligence to learn of the existence of a cause of action." *Limoli*, supra; *Webb*, supra. However, where there is a question of the insured's exercise of ordinary care in discovering its injury, the question is best resolved by a jury. *Leagan v. Levine*, 158 Ga. App. 293, 294 (279 SE2d 741); *Morgan v. Carter*, 157 Ga. App. 218, 219 (276 SE2d 889); *Simons v. Conn*, 151 Ga. App. 525, 528 (260 SE2d 402). Summary judgment as to this issue was inappropriate.

In addition, our Supreme Court has held that "[i]f no facts are involved but the simple one of length of time which elapsed between the accrual of the action and the institution of the suit, the question whether the action was barred is one of law; but where there are facts involving fraud and excuses for delay in discovering the same, the question is one of mixed law and fact, and is one for determination by the jury under proper instructions from the court." *Morris v. Johnstone*, 172 Ga. 598 (2) (158 SE 308); accord *Brown v. Brown*, 209 Ga. 620 (7) (75 SE2d 13); *Larkins v. Boyd*, 205 Ga. 69, 72 (52 SE2d 307). The fraud of Gilbert was in issue and there was a delay in discovering the same. The acts of Gilbert cited by Fidelity, while they were of a suspicious nature, are not conclusive as to actual notice to Sun Life that they had sustained an agent-caused loss, or the amount thereof, and are only a circumstance for consideration of the jury on the questions of diligence in discovery of the fraud. See *Jim Walter Corp. v. Ward*, 150 Ga. App. 484, 489 (258 SE2d 159), revd. on other grounds, 245 Ga. 355 (265 SE2d 7). Accordingly, it was error for the trial court to grant summary judgment to Sun Life, as this issue should have been submitted to the jury insofar as it permitted this action to be brought for that amount of the loss representing "office expense allowance and related items," but excluding advanced commission.

4. The cross-appeal is rendered moot by our holding.

*Judgment reversed in part and affirmed in part in Case No. 69484; appeal dismissed in Case No. 69485. Beasley, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED MARCH 7, 1985 —
REHEARING DENIED MARCH 28, 1985 — 

*George C. Reid, Laurie B. Gilbert*, for appellant.
*Michael A. Dailey*, for appellee.