S91Q1250. RYAN v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
(413 SE2d 705)

BELL, Justice.

This case is here by way of certified question from the United States Court of Appeals for the Eleventh Circuit. The relevant facts, as certified by the Eleventh Circuit, are as follows:

On September 3, 1988, Frank D. Ryan died from injuries

sustained in a collision with another vehicle. Ryan was pronounced dead at the scene of the accident. The deceased and appellant were the named insureds under an automobile insurance policy issued by State Farm Mutual Automobile Insurance Company. The policy provided for coverage "P" limits of $5,000.00 — the basic no-fault personal injury protection coverage provided for by the Georgia Motor Vehicle Accident Reparations Act [, OCGA Ch. 33-34] (footnote omitted).

The amount payable under coverage "P" was subject to an aggregate limit of $5,000.00. Of this amount, up to $2,500.00 was payable for medical expenses and up to $1,500.00 was payable for funeral expenses. The "survivors' loss" benefit provided that it was "compensation paid if an insured dies as a result of the accident. It is payable as though the deceased were alive but totally disabled." State Farm's limits of liability under coverage "P" were stated in the policy as follows (emphasis omitted):
1. The Most We Pay

The most we pay for each benefit for an insured is limited to the amount shown in the Schedule for that benefit under your coverage symbol. Under "Aggregate Limit" is the total amount of coverage for all loss and expense due to bodily injury to one insured.

The Ryans' policy of insurance also provided for an additional "Medical Payments" coverage, denominated as coverage "C", with a limit of $5,000.00, including a maximum of $2,500.00 payable for funeral services and expenses. The medical payments coverage appears to be optional, nonstatutory no-fault insurance. (Footnote omitted.) The limits of liability under coverage "C" were stated as follows:

1. The amount of coverage for medical expenses, including funeral services, is shown on the declarations page under "Limit of Liability — Coverage C — Each Person". If the amount shown is $2,500 or more, the most we pay for funeral services is $2,500 per person.

2. This coverage is excess over any medical or funeral expense paid or payable under the no-fault coverage of this or any other policy.

The total amount of the funeral and burial expenses for

the deceased was $3,619.25. The only medical expense incurred as a result of Frank D. Ryan's injury and death was $75.00 for an ambulance.

This litigation arose out of a dispute between appellant Gerlinde G. Ryan and appellee State Farm over the allocation of costs under the policy. Appellant contends that the entire $5,000.00 available under coverage "P" should be counted as survivors' loss benefits. Under her interpretation, she would also receive the entire $2,500.00 in funeral expenses provided for by coverage "C", as well as $75.00 for the ambulance. Appellant's interpretation yields a payment on the policy of $7,575.00.

State Farm emphasizes that the policy states that coverage "C" is "excess over any medical or funeral expense paid or payable" under coverage "P". State Farm therefore maintains that the funeral and ambulance expenses must first be deducted from the $5,000.00 provided for by coverage "P". This would leave $3,425.00 as the survivors' loss benefit. Because $1,500.00 of the funeral expenses would be paid under coverage "P", coverage "C" would pay the remainder of the funeral expenses, $2,119.25. State Farm's allocation of expenses yields a total payment of $7,119.25. Thus, the parties differ from each other by only $455.75. The following chart may be helpful in comparing the parties' allocations of expenses:

| COVERAGE | APPELLANT | STATE FARM |
| --- | --- | --- |
| "P" (No-Fault) | $5,000.00 (survivor) | $3,425.00 (survivor)<br>$1,500.00 (funeral)<br>$   75.00 (ambulance) |
| "C" (Medical) | $2,500.00 (funeral)<br>$   75.00 (ambulance) | $2,119.25 (funeral) |
| TOTAL | $7,575.00 | $7,119.25 |

Based on the foregoing facts, the Eleventh Circuit has certified the following question to this Court:

Under the terms of the insurance policy in this case, does Georgia law support the insured's allocation of payments such that survivors' loss benefits completely exhaust the available personal injury protection coverage and that all medical and funeral expenses are therefore paid out of the excess medical payments coverage?

Ryan acknowledges that coverage "C" provides that it is "excess over any medical or funeral expense paid or payable" under coverage "P." However, relying on the rule of interpretation of insurance contracts that "the law favors coverage," *Reynolds v. Transport Ins. Co.*, 178 Ga. App. 462, 464 (343 SE2d 502) (1986), she contends that her medical and funeral benefits are not "payable" under the no-fault coverage, because, as the law favors coverage, the $5,000 of no-fault coverage should be counted as survivors' loss benefits. Ryan also relies on *Acheson v. State Farm Mut. Auto. Ins. Co.*, 182 Ga. App. 218 (355 SE2d 128) (1987), in which the Court of Appeals held that Acheson had the right to allocate her medical, funeral, and survivors' loss benefits expenses between her optional no-fault coverage and her medical payments coverage to maximize the coverage available to her.

State Farm responds that the clear wording of the insurance policy requires that Ryan's funeral and medical expenses first be paid out of the funeral and medical benefits available under no-fault. Moreover, State Farm contends that *Acheson*, 182 Ga. App., supra, does not control this case, because it involved optional no-fault benefits and under OCGA § 33-34-5 (a) (1) insureds have the power to specify how optional no-fault benefits shall be paid. As we will explain in the remainder of this opinion, we agree with State Farm's reasoning.

As framed by the parties, the critical issue is whether the medical, funeral, or survivors' loss benefits should be paid first with the $5,000 of required no-fault coverage. If the medical and funeral benefits should be paid first, then those benefits are "payable" to the insured, and State Farm's allocation of benefits is correct. If the survivors' loss benefits should be paid first, then the medical and funeral benefits are not "payable" under coverage "P," and Ryan's allocation of benefits is correct.

In deciding this issue, we must try to ascertain the intention of the parties by looking to the insurance contract as a whole. *James v. Pa. Gen. Ins. Co.*, 167 Ga. App. 427, 431 (2) (306 SE2d 422) (1983). In determining the intention of the parties, we must first take into consideration the ordinary and legal meaning of the words employed in the insurance contract. Id. If the terms of the contract are plain and unambiguous, the contract must be enforced as written, *Fidelity &c. Co. of Md. v. Sun Life Ins. Co.*, 174 Ga. App. 258, 260 (1) (329 SE2d 517) (1985), so long as it is within the prescribed bounds of the law, *Standard Guar. Ins. Co. v. Davis*, 145 Ga. App. 147, 151 (243 SE2d 531) (1978). If an ambiguity is present, the policy should be construed in favor of the insured and to provide maximum coverage. *James*, supra, 167 Ga. App. at 431 (2).

Turning to the language of the policy, we begin by noting that the provisions of the no-fault section of the policy are silent regarding

the priority of payment of the relevant no-fault benefits. However, coverage "C" specifies that it provides "excess" medical and funeral benefits. We find that, by using the term "excess," the parties have expressed an intent that the medical payments coverage will only come into play once the medical and funeral expenses of the insured exhaust the medical and funeral benefits of the no-fault coverage. Put another way, for coverage "C" to provide "excess" medical and funeral benefits, Ryan's medical and funeral expenses must first be allocated to the medical and funeral benefits of the no-fault coverage. Moreover, to hold, as Ryan would have us do, that Ryan could first exhaust the $5,000 in required no-fault benefits with $5,000 of survivors' loss benefits and then carry over the medical and funeral expenses to the medical payments coverage would render the word "excess" meaningless, as the medical payments coverage would not be providing "excess" medical and funeral benefits but would instead be providing primary medical and funeral benefits. For these reasons, we conclude that under the terms of the policy, the parties intended that, if the insured has medical and funeral expenses and survivors' losses, the $5,000 in required no-fault coverage must be used first to pay the insured's medical and funeral expenses and then to pay the survivors' losses.

Furthermore, the allocation scheme of Ryan's policy is within the prescribed bounds of the law. OCGA § 33-34-4 does not specify the order in which the no-fault benefits it requires shall be paid. In the absence of any direction by the General Assembly, the parties are free to contract regarding the priority of payment of required no-fault benefits. See *Standard Guar. Ins. Co. v. Davis*, supra, 145 Ga. App. at 151.

Finally, we agree with State Farm that *Acheson*, supra, 182 Ga. App., is inapposite, as it dealt with the allocation of optional no-fault benefits, and § 33-34-5 (a) (1) grants insureds the power to allocate those benefits. The General Assembly, however, has not granted insureds the power to allocate required no-fault benefits.

Because the language of Ryan's policy indicates the parties intended for the $5,000 of no-fault coverage to be applied first to Ryan's medical and funeral expenses, and because such an allocation is lawful, we conclude that Ryan's medical and funeral expenses are "payable" under coverage "P" within the meaning of the medical payments section of the policy. Therefore, State Farm's allocation of payments was correct, and we answer the certified question in the negative.

*Certified question answered in the negative. Clarke, C. J., Weltner, P. J., Bell, Hunt, Benham and Fletcher, JJ., concur.*

DECIDED FEBRUARY 19, 1992.

Samuel W. Oates, Jr., for appellant.
Hatcher, Stubbs, Land, Hollis & Rothschild, William B. Hardegree, for appellee.