**DAMAR, INC., Plaintiff,**

v.

**UNITED STATES FIRE INSURANCE COMPANY; Westchester Fire Insurance Company; Travelers Indemnity Company; and The North River Insurance Company, Defendants.**

Civ. A. No. 1:92–CV–1049–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 28, 1993.

Roy E. Barnes, Benny Carman Priest, Barnes, Browning, Tanksley & Casurella, Marietta, GA, for plaintiff.

Stevan Anthony Miller, Richard T. Gieryn, Kristen Kay Duggan, Drew, Eckl & Farnham, Michael B. Terry, M. Jerome Elmore, Bondurant, Mixson & Elmore, Atlanta, GA, Kevin M. Haas, Kevin E. Wolff, McElroy, Deutsch & Mulvaney, Morristown, NJ, for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on Defendants United States Fire Insurance Company, Westchester Fire Insurance Company, The North River Insurance Company,[1] and Travelers Indemnity Company's motions for summary judgment in this declaratory judgment action on a number of insurance contracts brought by Plaintiff Damar, Inc.

## I. UNDISPUTED FACTS

Damar, Inc., manufactures and paints metal products according to specifications provided by customers. From 1956 until at least 1985, Damar intentionally disposed of hazardous waste generated by its metal cleaning process into a pit located on its property. This waste leached into the groundwater. Damar eventually entered into several consent orders with the Georgia Environmental Protection Agency to address this problem.

Defendants issued a number of primary liability policies to Damar. Defendant U.S. Fire also issued umbrella policies which covered liabilities in excess of these primary policies. At issue is language contained in the liability primary and umbrella policies which addresses excluded coverage. Although the policies differ slightly, it is undisputed that the following examples contain the language to be construed by this court in this action. Liability coverage does not apply:

> to bodily injury or property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid or gaseous or thermal waste or pollutant: (1) if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of the In-

---

1. Defendant North River Insurance Company was not an original party to this case. North River was added by consent order entered on June 15, 1993.

sured or any person or organization for whose acts or omissions any Insured is liable; or (2) resulting from or contributed to by any condition in violation of or non-compliance with any governmental rule, regulation or law applicable thereto; . . . .

or does not apply:

to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gasses, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

Finally, a number of the most recent policies contained language that stated that the liability insurance did not apply:

to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) at or from premises owned, rented or occupied by the named Insured;

(b) at or from any site or location used by or for the named Insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) which are at any. time transported, handled, stored, treated, disposed of, or processed as waste by or for the named Insured or any person or organization for whom the named Insured may be legally responsible; or

(d) at or from any site or location on which the named Insured or any contractors or subcontractors working directly or indirectly on behalf of the named Insured or performing operations:

(1) if the pollutants are brought on or to the site or location in connection with such operations; or

(2) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

to any loss, cost or expense arising out of any government direction or request that the named Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Damar was also covered by a number of property insurance policies issued by Defendants. Damar concedes in its response to Defendants' motions for summary judgment, however, that these property insurance policies would not cover the liability arising out of the hazardous waste dumped on Damar's property.

## II. LEGAL DISCUSSION

 Defendants argue that although the pollution exclusions differed slightly, all exclude the intentional dumping of hazardous waste into the ground by an insured. In construing the language of these exclusions, the court looks to Georgia law, since the contract was made in Georgia to insure a Georgia-based company. *American Family Life Assurance Co. v. U.S. Fire Co.*, 885 F.2d 826, 830–31 (11th Cir.1989); *Federal Ins. Co. v. National Distribution Co.*, 203 Ga.App. 763, 765, 417 S.E.2d 671 (1992). Insurance policies in Georgia are governed by the ordinary rules of construction. *Progressive Preferred Ins. Co. v. Brown*, 261 Ga. 837, 838, 413 S.E.2d 430 (1992); *Rothell v. Continental Casualty Co.*, 198 Ga.App. 545, 545–46, 402 S.E.2d 283 (1991); O.C.G.A. § 13–2–3. Under ordinary rules of construction, this court must ascertain the intention of the parties by looking to the entire insurance contract. *Ryan v. State Farm Mutual Auto Ins. Co.*, 261 Ga. 869, 872, 413 S.E.2d 705 (1992); *James v. Pennsylvania General Ins. Co.*, 167 Ga.App. 427, 431, 306 S.E.2d 422 (1983). The court must first consider "the ordinary and legal meaning of the words employed in the contract." *Id.* If this language is plain and unambiguous and does not violate the law, the contract must be enforced as written. *Ryan*, 261 Ga. at 872, 413 S.E.2d 705; *Fidelity & Deposit Co. of Maryland v. Sun Life Ins. Co.*, 174 Ga.App. 258, 260, 329 S.E.2d 517 (1985). If ambiguity is present, however, the policy must be construed against the

insurer to provide maximum coverage to the insured. *Ryan*, 261 Ga. at 872, 413 S.E.2d 705; *Claussen v. Aetna Cas. & Surety Co.*, 259 Ga. 333, 380 S.E.2d 686 (1989).

■ Plaintiff Damar admits that the dumping of the hazardous waste into the pit on its property was intentional. Damar argues, however, that it neither expected nor intended that the placement of these chemicals would disperse or release to damage or harm anyone, and that since this harm was unexpected and unintended from its standpoint as the insured, the pollution exclusions do not apply to bar coverage. Defendants argue, however, that the issue is not whether Damar intended to harm or cause damage, but rather whether Damar intended to dump the hazardous waste. Defendants contend, therefore, that since Damar admits that it intended to dump the waste into the pit, the pollution exclusion applies and Plaintiff's claims are barred as a matter of law.

The parties do not dispute that the damage for which liability is being incurred by Damar has arisen out of its disposal of the hazardous waste on its property. Thus, the initial portion of these exclusion clauses that states that coverage does not apply "to bodily injury or property damage arising out of any emission, discharge, seepage, release or escape of any kind of any liquid, solid, gaseous or thermal waste or pollutant" or "to bodily injury or property arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gasses, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water" is implicated. The dispute between the parties is only as to whether the qualifying language thereafter means that the exclusion will not apply if the disposal was unintended or if the damage from the disposal was unintended.

The Georgia Supreme Court has construed the sudden and accidental language found in the U.S. Fire, Westchester and North River policies. In *Claussen v. Aetna Cas. & Surety Co.*, the court found the word "sudden" to mean "unexpected." 259 Ga. at 335, 380 S.E.2d 686. The court also stated that the pollution exclusion clause which contains this

language focuses "on whether the discharge, dispersal or release of pollutants is unexpected and unintended; ... the pollution exclusion clause therefore has the effect of eliminating coverage for damage resulting from the intentional discharge of pollutants." The *Claussen* court was examining the definition of sudden to determine whether the discharge of pollutants at a site over an extended period of time could fall within the pollution exclusion clause. It was not addressing it in the context of an actual intentional dumping. This court, however, does find the Georgia Supreme Court's overall reading of this pollution exclusion clause to be one that would bear the usual and common meaning of the language used. *See* O.C.G.A. § 13-2-2(2). U.S. Fire, Westchester and North River's policies using this language, therefore, exclude specifically the coverage for damage resulting from the intentional discharge of pollutants.

■ Unfortunately for this court, the Georgia Supreme Court has never construed the language in Defendant Travelers' policies directly. This court, however, does not find any ambiguity in the language. Furthermore, the Georgia Supreme Court in *Claussen* found that the pollution exclusion clause in that case focused on whether the discharge, dispersal or release of the pollutants is unexpected and unintended. The Travelers' policy has the opposite focus. It focuses on whether the emission, discharge, seepage, release or escape is expected or intended. If a discharge occurs which is expected or intended, the pollution exclusion applies. It makes no reference in such a situation to whether the *damage* was expected or intended. Since it is undisputed in this case that the dumping by Damar was intended, this clause also acts to prevent the Travelers' policies from covering Damar's liabilities.

This court finds that the first two pollution exclusion clauses at issue have the same meaning for purposes of determining whether coverage applies to the intent to discharge the waste versus an intent to cause damage. The clear language of these policies shows that the former is meant.

■ Plaintiff also argues that the longer "absolute" pollution exclusion clause found in several of the later policies issued to Damar

has been found by a Georgia court to be clear and unambiguous. *Perkins Hardwood Lumber Co. v. Bituminous Casualty Corp.*, 190 Ga.App. 231, 232, 378 S.E.2d 407 (1989). This court agrees that this language is virtually absolute. It is intended to exclude liability coverage for all liabilities arising out of pollution. Plaintiff's attempts to argue that the timing of the disposal of the hazardous waste on its property somehow works to render this exclusion inapplicable are meritless.

## III. CONCLUSION

In light of the foregoing discussion, this court finds as follows: Defendants' motions for summary judgment are GRANTED [17–1, 20–1]. The Clerk of Court is DIRECTED to ENTER JUDGMENT in favor of Defendants and to DISMISS this action.

SO ORDERED.