[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 26, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16407
Non-Argument Calendar

_____

D. C. Docket No. 04-01317-CV-TWT-1

EDGAR BERTRAM POWERS,

Plaintiff-Appellant,

versus

UNUM CORPORATION,
d.b.a. UNUMProvident Corporation,

Defendant,

THE PAUL REVERE LIFE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 26, 2006)**

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

In this diversity action arising out of an insurance policy, Plaintiff-Appellant Edgar Bertram Powers appeals the district court's order granting summary judgment to Defendant Paul Revere Life Insurance Company ("Paul Revere"). After review, we affirm.[1]

## I. BACKGROUND

In 1983, Appellant Powers, a practicing physician, purchased disability insurance from Paul Revere through its agent Joshua Ovett. The disability insurance policy provided benefits of $6,000 per month if Powers became totally disabled. The policy also contained, inter alia, a provision addressing changes to the policy, which stated, "No one, including Our agent, has the right to change or waive any part of this Policy unless the change is approved in writing on the Policy by one of Our officers."

At the same time that Powers applied for the disability insurance, he also applied for and received four riders, including a future income option benefit rider, a lifetime total disability benefit rider, a total disability in your occupation rider

---

[1]We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Miller v. Scottsdale Ins. Co., 410 F.3d 678, 680 (11th Cir. 2005). We affirm the grant of summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

2

and a supplemental residual disability benefit rider. These riders were signed by the president and secretary of Paul Revere and were attached to the policy. Powers had the option to apply for a cost of living adjustment benefit ("COLA benefit"), but did not. Therefore, Powers's policy did not contain a COLA benefit provision, nor was a COLA rider issued with his policy.

In the 1980s, the disability insurance market was very competitive, causing insurance companies to improve existing policies retroactively at no additional cost to the insured. In 1985, Paul Revere made improvements, at no additional premium, to certain coverage features that existed in disability policies already in force. Those insureds, whose policies Paul Revere deemed eligible for the policy improvements, were issued policy amendments, which were signed by an officer of Paul Revere. The policy improvements included a COLA improvement of 7% if either the insured's policy had been issued with a COLA benefit provision or a COLA benefit rider had been added to the policy. Because Powers's policy did not contain a COLA benefit provision and Powers had not added a COLA rider, Paul Revere did not issue Powers a COLA benefit policy amendment.

However, on April 29, 1985, Paul Revere did issue Powers two other policy improvements, namely a return-to-work benefit and a modification of the policy's definition of "prior earnings" to adjust for inflation, which enhanced Powers's

3

residual disability benefit.  The policy amendment also stated that "[a]ll provisions of Your Policy remain the same except where changed by this amendment."  The policy amendment was signed by the secretary and the president of Paul Revere.  A letter from Paul Revere's second vice president on the reverse side of the policy amendment summarized the two policy improvements and instructed the insured to file the amendment with the insured's copy of the policy.

On August 27, 1985, Powers received a letter from Ovett, the Paul Revere local agent who originally sold Powers the disability policy.  The letter was on Paul Revere letterhead and was signed by Ovett as "Senior Brokerage Representative" for Paul Revere.[2]  Ovett, as a brokerage representative, was not an officer of Paul Revere and was not authorized to make changes to an insurance policy issued by Paul Revere.  Nor did Ovett ever represent to Powers that he was an officer of Paul Revere.

In the August 27, 1985 letter, Ovett advised Powers that "our company has recently made three policy improvements in our professional disability income contract series" and that Paul Revere was "making these enhancements retroactive to your personal contract at no cost."  The letter then described the following three

---

[2]As a brokerage representative, Ovett's responsibility was to work with insurance agents for other companies who wished to sell products that were offered by Paul Revere that were not available through their own companies. Ovett was also able to solicit applications for Paul Revere insurance products as an individual agent.

4

"features": (1) the return to work benefit; (2) super indexing, which referred to the inflation adjustment to the residual disability benefit; and (3) a cost of living improvement. In other words, two of the three policy improvements listed in Ovett's August 27 letter were the policy improvements contained in the policy amendment issued by Paul Revere to Powers four months before on April 29, 1985. The third policy improvement listed in Ovett's letter, the COLA improvement, was not contained in the April 29, 1985 policy amendment.[3]

In September 1985, Powers exercised an option offered by Paul Revere to increase his coverage under his future income option benefit rider from $6,000 to $7,000 per month for an additional annual premium of $290.55. As a result, Paul Revere issued a rider signed by the secretary of Paul Revere.

In April 2001, Powers became disabled and left his medical practice. Since Powers filed his claim, Paul Revere has paid him monthly disability benefits of $7,000 per month. However, Paul Revere has refused to pay the COLA benefit.

Powers brought this action seeking to recover the COLA benefit. Powers's second amended complaint alleged claims of breach of the insurance policy,

---

[3]As to the COLA improvement, the letter said:
Cost of Living Improvement – The Cost of Living feature in your contract will increase your benefits by 7% per year until age 65 if you are disabled. Now if you are disabled and your Benefit increases and you subsequently return to work full time you will be able to obtain the increased amount. This new higher amount would then be applicable to the next claim.
The problem for Powers is that he did not have a COLA benefit in his policy.

5

promissory estoppel, bad faith denial of the claim and attorney's fees and expenses due to stubborn litigiousness. Paul Revere filed a motion for summary judgment on all counts, which the district court granted. Powers timely appealed.

## II. DISCUSSION

### A. Breach of the Disability Policy

Under Georgia law, insurance policies "are interpreted by ordinary rules of contract construction." Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 269 Ga. 326, 327, 498 S.E.2d 492, 494 (1998). An insurance contract is to be construed in accord with the intent of the parties. Ryan v. State Farm Mut. Auto. Ins. Co., 261 Ga. 869, 872, 413 S.E.2d 705, 707 (1992); see also O.C.G.A. § 13-2-3. To determine the parties' intent, the court "must first take into consideration the ordinary and legal meaning of the words employed in the insurance contract." Ryan, 261 Ga. at 872, 413 S.E.2d at 707. If the contract is clear and unambiguous, "its plain terms must be given full effect even though they are beneficial to the insurer and detrimental to the insured." Woodmen of the World Life Ins. Soc'y v. Etheridge, 223 Ga. 231, 235, 154 S.E.2d 369, 372 (1967); Ryan, 261 Ga. at 872, 413 S.E.2d at 707. In other words, when no ambiguity exists, "the court is to look to the contract alone to find the parties' intent." Park 'N Go of Ga., Inc. v. U.S. Fid. & Guar. Co., 266 Ga. 787, 791, 471 S.E.2d 500, 503 (1996).

6

Here, the plain terms of the disability insurance policy provide that a change to the policy cannot be made by Paul Revere's agent unless the change is approved in writing on the policy by one of Paul Revere's officers.[4]  It is well-settled under Georgia law that an insurer may limit the authority of its agents to modify insurance policies.  See, e.g., Reliance Life Ins. Co. v. Hightower, 148 Ga. 843, 98 S.E. 469, 470 (1919) ("It was within the power of the insurance company, as between itself and its agent to define and limit the powers of the latter."); Hutson v. Prudential Ins. Co. of Am., 122 Ga. 847, 50 S.E. 1000, 1002 (1905) ("The agent's authority may be limited, and, if the party dealing with him has notice that his powers have been restricted, his principal will not be bound if he exceeds his authority."); Reese v. Fid. Mut. Life Ass'n, 111 Ga. 482, 36 S.E. 637, 639-40 (1900) ("It is a familiar rule that a principal may limit the power of his agent, even within the apparent scope of his authority, so that the agent cannot, in violation of the restriction, bind his principal when dealing with one who has notice of the limitation.").

Because Ovett was only an agent and not an officer of Paul Revere, under the express terms of Powers's policy, Ovett was without authority to change the

---

[4]Although Powers argues that the word "change" in the policy is ambiguous, we disagree. The ordinary meaning of the verb "change" is to alter, modify or amend, which would include Paul Revere's efforts to improve, enhance or add new features or benefits to a policy.

7

policy's terms on his own. Therefore, Ovett's August 27, 1985 letter to Powers, which was not signed by an officer of Paul Revere, could not as a matter of law change Powers's policy to include a COLA benefit. Given that Powers's disability policy contained no COLA benefit, Paul Revere did not breach the policy by refusing to pay Powers a COLA benefit. Therefore, the district court properly entered summary judgment in favor of Paul Revere as to Powers's breach of the policy claim.

**B.     Promissory Estoppel**

Under Georgia law, to establish a claim of promissory estoppel, the plaintiff must show that (1) the defendant made certain promises, (2) the defendant should have expected that the plaintiff would rely on such promises, (3) the plaintiff did in fact rely on such promises to his detriment, and (4) injustice can be avoided only by enforcement of the promises. O.C.G.A. § 13-3-44(a); Houston v. Houston, 267 Ga. App. 450, 451, 600 S.E.2d 395, 396 (2004); Doll v. Grand Union Co., 925 F.2d 1363, 1371 (11th Cir. 1991). Although the reasonableness of the plaintiff's reliance on the promise ordinarily is a jury issue, "a determination of reasonableness can be made as a matter of law if a prior disclaimer or disclosure prevents justifiable reliance on the representation." Gilmour v. Am. Nat'l Red Cross, 385 F.3d 1318, 1321 (11th Cir. 2004) (citing W.R. Grace & Co.-Conn. v.

8

Taco Tico Acquisition Corp., 216 Ga. App. 423, 426, 454 S.E.2d 789 (1995)); see also Gerdes v. Russell Rowe Commc'ns, Inc., 232 Ga. App. 534, 536, 502 S.E.2d 352, 354-55 (1998).

Similarly, Georgia courts have long held that the common law doctrines of estoppel and waiver cannot be applied to an insurer when the insured is on notice of limitations placed on an insurance agent's authority and nonetheless relies upon the agent's representations made outside the scope of his authority. See, e.g., Reliance Life Ins., 98 S.E. at 470-71 (collecting cases and rejecting application of the doctrines of waiver and estoppel where the express terms of the insurance policy withhold authority from the insurance agent to modify the policy terms); cf. Fireman's Fund Ins. Co. of San Francisco v. Standridge, 103 Ga. App. 442, 447-48, 119 S.E.2d 585, 589 (1961) (concluding that, when agent acts within his authority in promising to make an endorsement to the policy, insurer is estopped to deny insured benefits under the policy).[5]

Here, Powers's policy explicitly precluded Paul Revere agents, such as

---

[5]Under Georgia law, limitations in an insurance policy on the authority of an agent to waive terms of the policy do not apply to an agent's conduct before the policy is issued. Johnson v. Aetna Ins. Co., 123 Ga. 404, 51 S. E. 339, 339-40 (1905). However, once the policy is issued and the parties are on notice of its terms, "[t]he insured is bound to know what are the rights of the company, and that none of them can be relinquished save in the manner pointed out in the policy; and he, on his part, will not be heard to urge a waiver by the company unless it has been made in the manner required." Id. at 341. Ovett's August 27, 1985 letter to Powers was sent two years after the policy was issued. Thus, Ovett's letter could not act as a waiver of the policy's terms.

Ovett, from making changes to the policy unless the change was signed by an officer of Paul Revere. Powers was on clear notice that Ovett on his own could not add a COLA benefit to the policy.[6] We note that the reasonableness of Powers's reliance on the August 27, 1985 letter is further undermined by these undisputed facts: (1) in the past, Powers had received several policy riders and amendments from Paul Revere, all of which were signed by officers of Paul Revere but not by Ovett; (2) in April 1985, Powers had received a properly endorsed policy amendment listing only two of the three policy improvements discussed in the August 27 letter; and (3) approximately one month after Ovett's August 27 letter, Powers received another rider, duly signed by an officer of Paul Revere but not by Ovett, which also did not contain the COLA benefit improvement discussed in the August 27 letter. Given the express terms of the policy and the parties' course of conduct, any reliance upon Ovett's letter was unreasonable as a matter of law.[7] Therefore, the district court properly granted summary judgment to Paul

---

[6]Although, under Georgia law, an insured generally is charged with knowledge of the contents of a policy, Powers admits that he read the policy and was aware of its contents. See Se. Sec. Ins. Co. v. Empire Banking Co., 230 Ga. App. 755, 757, 498 S.E.2d 282, 284 (1998).

[7]To the extent Ovett's letter could be construed as an opinion as to coverage under the policy, Georgia courts have held that such expressions of opinion do not "work an estoppel – even against the agent who voiced it, or against his principal." Parris & Son, Inc. v. Campbell, 128 Ga. App. 165, 169, 172-73, 196 S.E.2d 334, 338, 339 (1973) (explaining that it is well-settled that an insured has a "duty to examine his policy and ascertain for himself what coverage he has" and that the doctrines of estoppel and waiver cannot be used to bring within the coverage of the policy risks not covered by its terms).

Revere on Powers's promissory estoppel claim.

## C.    Bad Faith and Attorney's Fees

Under O.C.G.A. § 33-4-6, an insurer is subject to penalties and the imposition of attorney's fees if it refuses in bad faith to pay a covered loss within sixty days of a demand from the policy holder.  Because there is no covered loss and the district court properly entered summary judgment in favor of Paul Revere, Powers is not entitled to an award of attorney's fees.[8]

**AFFIRMED.**

---

[8]The district court also properly concluded that Powers's claim for attorneys fees and litigation expenses under O.C.G.A. § 13-6-11 was barred by O.C.G.A. § 33-4-6, which provides insureds the exclusive procedure to recover attorneys fees.  See McCall v. Allstate Ins. Co., 251 Ga. 869, 871-72, 310 S.E.2d 513, 515-16 (1984); Howell v. S. Heritage Ins. Co., 214 Ga. App. 536, 537, 448 S.E.2d 275, 276 (1994).