[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11546
Non-Argument Calendar
_____

D. C. Docket No. 4:12-cv-00230-HLM

FIDELITY & GUARANTY LIFE INSURANCE COMPANY,
f.k.a. OM Financial Insurance Company,

Plaintiff - Counter Defendant – Appellee,

versus

PATRICIA DUPREE BROOKS,
a.k.a. Pat Brooks-Dupree,

Defendant - Cross Claimant -
Counter Claimant - Cross Defendant -
Appellant,

CARLA RICHELLE KEITH BARTON,
RICHARD C. KEITH, JR.,

Defendants - Cross Defendants -
Cross Claimants,

OWEN FUNERAL HOME,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 18, 2014)

Before TJOFLAT, ANDERSON, and DUBINA, Circuit Judges.

PER CURIAM:

Appellant, Patricia Dupree Brooks ("Brooks"), appeals the district court's order granting summary judgment to Fidelity & Guaranty Life Insurance Company ("Fidelity"), on Fidelity's declaratory judgment action regarding its obligation under a life insurance policy accidental death rider provision. We affirm.

## I.  BACKGROUND

On December 11, 2000, Fidelity issued a term life insurance policy to Richard Keith ("Keith"), which contains a rider that provides an accidental death benefit of $250,000. The rider provides in relevant part that the insurer will pay the rider's benefit to the beneficiary of the policy "if the insured's death occurs . . . [d]irectly and independently of all other causes as a result of accidental bodily injury." [R. Doc. 118-2.] The rider excludes benefits if "death results directly or indirectly from . . . suicide . . . [or the v]oluntary taking of drugs, narcotics, barbiturates, and sedatives, unless, as prescribed by a physician." [*Id.*]

On May 15, 2012, Keith purchased a 90-day supply of zolpidem, 10 mg., that his treating physician, Dr. Lee Battle, prescribed. The prescription directed Keith to take one zolpidem per day at bedtime, for sleep. On June 14, 2012, Keith filled a prescription from Dr. Battle for a 90-day supply of tramadol, 2.75 mg. This prescription directed Keith to take one tablet every six to eight hours, as needed for pain. Keith died between 10:00 p.m. on July 22, 2013, and 9:45 a.m. on July 23, 2013. Brooks found Keith inside his garage with the car's engine running.

The county coroner conducted an autopsy of Keith, and as part of the autopsy, the coroner obtained blood samples from Keith and had those samples analyzed in a laboratory for the presence of narcotics. The autopsy reports that Keith's cause of death was "automobile exhaust inhalation" and lists the manner of death as "suicide." [*Id.*] The death certificate indicates the same cause and manner of death. The toxicology report indicates that Keith's blood tested positive for tramadol, 2.8 mg. and for zolpidem, 3.0 mg. These levels exceed therapeutic dosages. According to Fidelity, these levels were ten times the prescribed dosages.

Robert Bennett, Ph.D., Brook's expert, testified that post-mortem redistribution could have skewed the toxicology levels found at autopsy; however, he did not dispute that Keith failed to take the medicines as prescribed. Fidelity's expert, Dr. Stephen Munday, agreed, but opined that no post-mortem redistribution could account for Keith's toxicology levels being 10 times the prescribed dosages

3

for such medications.  Dr. Munday further opined that Keith's over-dosage led to substantial central nervous system depression and contributed to his ultimate death by carbon monoxide poisoning.  [*Id.*]  Dr. Battle agreed with Dr. Munday that the over-dosage contributed to Keith's death.

In October 2012, Fidelity filed a two-count complaint against Brooks, Owen Funeral Home, and Keith's surviving children.  In Count One, Fidelity sought to interplead the $250,000 life insurance death benefit under the policy to resolve the various competing death benefit claims of Brooks, the funeral home, and the insured's children.  In Count Two, Fidelity sought a declaratory judgment holding that Fidelity did not owe a benefit under the policy's accidental death benefit rider. The district court approved a consent final order presented by the parties and dismissed the insured's children and the funeral home from the action. Subsequently, Fidelity filed a motion for summary judgment as to Count Two, and Brooks filed a response and also filed a motion for partial summary judgment. Fidelity responded to Brooks's motion, but Brooks did not file a reply.  In March 2014, the district court entered a final order denying Brooks's motion and granting summary judgment in favor of Fidelity.  Brooks then perfected this appeal.

## II.  ISSUE

Whether the district court erred in granting summary judgment to Fidelity on its declaratory judgment action.

4

### III.  DISCUSSION

On appeal, Brooks contends that the policy's exclusion is ambiguous and, therefore, the district court erred in granting summary judgment to Fidelity.  We review *de novo* the district court's grant of summary judgment, and we apply the same legal standards that guided the district court's decision.  *Giddens v. Equitable Life Assurance Soc'y of the United States*, 445 F.3d 1286, 1292 n. 4 (11th Cir. 2006).

Georgia law provides that "[t]he construction of a contract is a matter of law for the court."  OCGA § 13-2-1. "Under Georgia law, the rights of the parties to an insurance policy should not be expanded beyond the terms of the policy." *Giddens*, 445 F.3d at 1297.  A court construing an insurance policy must attempt "to ascertain the intention of the parties by looking to the insurance contract as a whole."  *Ryan v. State Farm Mut. Auto. Ins. Co.*, 261 Ga. 869, 872, 413 S.E.2d 705, 707 (Ga. 1992).   In determining the intention of the parties and applying the rules of construction to an insurance contract, the court should give a term or phrase in the contract its ordinary and common meaning.  *Claussen v. Aetna Cas. & Surety Co.*, 259 Ga. 333, 334, 380 S.E.2d 686, 687–88 (Ga. 1989).  "Where the language of the contract is unambiguous and only one reasonable interpretation is possible, the contract must be enforced as written."  *Giddens*, 445 F.3d at 1297.  However, if the language of the contract is ambiguous, the court must construe the

language in favor of the insured and against the insurer. *Id.* "A word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one." *Barnes v. Greater Ga. Life Ins. Co.*, 243 Ga. App. 149, 150, 530 S.E.2d 748, 750 (Ga. App. 2000).

Brooks contends that the language in the policy, "unless, as prescribed by a physician," is ambiguous because it could mean either taking medication that has been prescribed by a doctor, or taking medication in the amount which the doctor prescribed. Brooks asserts that, in order to support Fidelity's interpretation, the word "taken" should be added to the language, and to support her interpretation, phrases such as "such drug" or "such medication" should be supplied, so that the ambiguous clause states "unless such medication as prescribed by a physician." Brooks relies on *Edwards v. Monumental Life Ins. Co.*, 812 F. Supp. 2d 1263 (D. Kan. 2011), to support her position.

We agree with the district court that there is no ambiguity in the policy's death rider exclusion. The exclusion provides, in relevant part, that no benefit will be paid for death which results directly or indirectly from the voluntary taking of drugs, narcotics, barbiturates, or sedatives, unless, as prescribed by a physician. The term, "as prescribed by a physician," is capable of only one reasonable meaning: that the drug must be both prescribed by a physician and taken as directed by the instructions on the prescription. The language cannot fairly be

6

understood in any different way.  *See Barnes*, *supra*.  Contrary to Brooks's

argument, the district court did not err in failing to add words or phrases to the

language of the exclusionary provision because the language was not ambiguous.

When there is no ambiguity and only one reasonable interpretation of the contract

is possible, the court must enforce the contract as written.  *See Giddens*, 445 F.3d

at 1297.

Moreover, Brooks's reliance on *Edwards* is misplaced.  The policy language

in *Edwards* provided that the insurer would deny benefits to an insured for "a Loss

which is caused by, results from, or contributed to by . . . taking of any drug,

medication, narcotic or hallucinogen," 812 F. Supp. 2d at 1271, differs from the

policy language at issue here.  Furthermore, the *Edwards* court relied on circuit

precedent for its conclusion.  *Id.* at 1273.  Although the district court in *Edwards*

found the policy language ambiguous under Kansas law, the district court in this

case found that under Georgia law of contract interpretation, the Fidelity policy

death rider exclusion is not ambiguous.  Brooks does not present a cogent

argument that the district court erred under Georgia law in its interpretation. Thus,

we conclude that the district court's interpretation in the present case was correct.

## IV.  CONCLUSION

Under the clear and unambiguous language in Fidelity's insurance policy

death rider exclusion, we conclude that the district court correctly found that there

7

is no coverage under the policy's accidental death benefit rider.  Accordingly, we affirm the district court's order granting summary judgment to Fidelity.

AFFIRMED.