**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 29, 2022**

# In the Court of Appeals of Georgia

A22A0369.   DARDEN   v.   PROGRESSIVE   MOUNTAIN   INSURANCE COMPANY et al.

DOYLE, Presiding Judge.

Following a traffic accident involving Gregory Darden and German Fandino Linares ("Fandino"), Darden filed a breach of contract suit against Progressive Mountain Insurance Company ("Progressive") and Ethio-American Insurance Company ("Ethio-American") (collectively, "the defendants"). The trial court granted summary judgment to the defendants, and Darden now appeals, arguing that the trial court erred by (1) finding that Ethio-American's fleet taxi insurance policy and Fandino's Progressive policy for his personal vehicle both excluded coverage of the vehicle at issue at the time of the wreck; and (2) failing to find that public policy requires that liability insurance under one or both policies must be available to

Darden under the facts of this case. For the reasons that follow, we affirm in part and reverse in part.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We apply a de novo standard of review and view the evidence in the light most favorable to the nonmovant."[1]

The record shows that at approximately 6:30 a.m., on September 19, 2017, Darden, who did not have an uninsured motorist policy, was driving a rental car,[2] and he was injured in a wreck with a taxi driven by Fandino, who recently had ended his over-night shift and was en route to pick up breakfast before going home. Fandino deposed that he was turning left across a multi-lane road to a restaurant, and was hit

---

[1] (Citations and punctuation omitted.) *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111-112 (722 SE2d 923) (2012), quoting *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] Specifically, Darden averred that he "was injured in a motor vehicle wreck that occurred [in the] early morning of September 19th, 2017. The vehicle I was operating was rented from Hertz and did not have uninsured motorist coverage. I did not own a personal vehicle or reside with a resident relative that owned a vehicle with uninsured motorist coverage. I am aware of no other insurance coverage that would cover the loss I suffered on September 19th, 2017."

by Darden, who was traveling through the right-most lane. At the time of the accident, neither person exhibited outward signs of injury, but Darden later was treated for injuries requiring several thousands of dollars of treatment. Pictures of Fandino's vehicle showed slight damage to the rear passenger-side door and quarter panel.

At the time of the accident, Fandino was driving a 2011 Honda Civic, which he had leased from Juan Phun for use as a taxi. The lease consisted of an oral agreement between Fandino and Phun, which agreement began approximately four weeks prior to the accident with Darden. Under the agreement, Fandino paid Phun $200 a week to lease the Civic.[3] Phun imposed no restrictions on the use of the Civic by Fandino, who was allowed to use it 24 hours a day and to drive it for personal tasks as well as transporting fares; Fandino deposed, however, that he used it only for taxi services.

Phun also supplied insurance from Ethio-American on the Civic and other vehicles he leased to other drivers. The policy listed specific vehicles as well as specific drivers to whom the policy applied. Phun had drivers come and go

---

[3] Fandino also paid OK Taxi $70-$85 each week for customers directed to him via the company phone application, but that company was not leasing the Civic to Fandino and is not a part of this litigation.

frequently, and in order to have them added to the policy when they leased a vehicle, he simply sent a copy of their drivers licenses to Ethio-American, which had rarely rejected a driver for insurance while he used the company. Usually Phun would go to the Ethio-American office and add drivers to the policy immediately when they began leasing a vehicle, but he deposed that he had an international trip scheduled approximately ten days after Fandino leased the Civic, and he failed to take Fandino's license to the insurance office prior to going on the trip. Fandino deposed that he had a Georgia drivers license and also had a personal vehicle (a Toyota Yaris) for which he had insurance under Progressive. Despite not adding Fandino to the policy, Phun gave Fandino a copy of an insurance card from Ethio-American for the Civic, and it was Fandino's understanding from Phun that he was covered by that insurance while he was driving the Civic.

After being notified of the accident, Progressive denied coverage to Fandino, stating that it would not cover the claim against him because the vehicle was being used as a taxi at the time of the incident. Ethio-American also denied coverage on the basis that Fandino was not a covered driver under its policy.

Darden sued both Phun and Fandino, and after both defaulted, Darden received a judgment of approximately $220,000 against them. After Phun and Fandino

4

assigned their rights to him, Darden sued Ethio-American and Progressive for breach of contract, attorney fees, and for bad faith litigation under OCGA § 13-6-11. Applicable to the claims against Ethio-American, its policy included coverage for ten listed automobiles, including the Civic at issue. Seven drivers were listed as well, but Fandino was not one of them. The policy stated that

> [t]he motor vehicle(s) listed on your Declaration page are NOT covered motor vehicle(s) under this Policy against liability for bodily injury or property damage if you allow someone to drive or operate the motor vehicle(s) other than: . . . another person [who] has been approved by Ethio-American and the State of Georgia or local taxi cab regulatory commission as an approved and licensed taxi cab driver with a valid permit. Unless such other person is listed on the Declaration Page as a named insured driver or on another policy with your named taxicab company on the Declaration Page for the relevant period of coverage, such other person has NOT been approved by Ethio-American as a driver to operate the motor vehicle(s) listed on your Declaration Page.

It also stated that Ethio-American would

> not pay for bodily injury or property damage claims that are caused by an otherwise covered accident or loss that occurs when the motor vehicle(s) listed on your Declaration Page are being used for personal purposes by you, any approved drivers, or any other person. For purposes of this Policy, a motor vehicle is being used for "personal purposes" when it is being driven, parked, or stored in any manner for

5

any purpose other than the pick-up and transport of passengers for hire by an approved driver. If you use the motor vehicle(s) listed on your Declaration Page for personal purposes, you must obtain separate insurance for such uses that are not part of this Policy for commercial use only.

This exclusion of coverage was repeated in a section titled, "Exclusions to Coverage for Property Damage and Bodily Injury," which stated that the policy did

not provide you with liability coverage for bodily injury damages, property damages, or any other claims of any kind that are caused by or arise out of the following: . . . Drivers and motor vehicles not listed on the Declaration Page. This Policy does not apply to accidents or losses of any kind that do not involve covered drivers and covered motor vehicle(s) listed on your Declaration Page[; or . . . ] Vehicle(s) used for personal use. This Policy does not provide insurance protection to you or any of the drivers listed on the Declaration page when the vehicles listed on the Declaration are used for personal purposes.

Pursuant to his personal Progressive policy, Fandino was a covered driver and his personal Toyota Yaris was listed as a covered automobile[4]. The policy also defined "Additional Auto" as "an auto you become the owner of during the policy

---

[4] The policy defined "Covered auto" as "any auto or trailer shown on the declarations page for the coverages applicable to that auto or trailer; [or] . . . any additional auto[.]"

6

period that does not permanently replace an auto shown on the declarations page,"

and Progressive agreed to cover an additional auto

> if: [A] we insure all other autos you own; [B] the additional auto is not covered by any other insurance policy; [C] you notify us within 30 days of becoming the owner of the additional auto; and [D] you pay any additional premium due. An additional auto will have the broadest coverage we provide for any auto shown on the declarations page. If you ask us to insure an additional auto more than 30 days after you become the owner, any coverage we provide will begin at the time you request coverage.

The policy specifically excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle or trailer while being used: [A] to carry persons or property for compensation, fee, salary, or wages; [B] for retail or wholesale delivery; or [C] for ride-sharing activity."[5] It also excluded "bodily

---

[5] The policy defined "ride sharing activity" as

> the use of any vehicle to provide transportation of persons or property in connection with a transportation network company from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s) or delivery assignment, including the time the user is on the way to pick up any passenger(s) or

7

injury or property damage arising out of the ownership, maintenance or use of any vehicle owned by you or furnished or available for your regular use, other than a covered auto for which this coverage has been purchased."

After the parties filed cross-motions for summary judgment, the trial court determined that the facts surrounding the accident excluded the accident from coverage under both policies and granted summary judgment to Progressive and Ethio-American. This appeal followed.

1. Darden argues that the trial court erred by determining that the Ethio-American policy did not cover the accident. We disagree.

> [I]n Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms. Thus, when faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous. A policy which is susceptible to two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction. Where a term of a policy of insurance is susceptible to two or more reasonable constructions, and the resulting ambiguity cannot be resolved, the term

---

property, or is transporting any passenger(s) or property.

8

will be strictly construed against the insurer as the drafter and in favor of the insured. If a policy exclusion is unambiguous, however, it must be given effect even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended.[6]

In response to the proliferation of non-taxi based ride-share companies, the Georgia Legislature updated legislation related to taxis and other ride-share services, including OCGA § 40-1-193.1, which required taxi services operating in Georgia to, among other things, "[o]btain and maintain personal injury and property damage liability insurance, which shall provide for the protection of passengers and property carried and of the public against injury in the coverage amounts as required by law."[7] In this case, Phun obtained and maintained liability insurance for his drivers and vehicles, but he failed to have Fandino added as a driver as required by the plain language of the policy.[8] The requirement of having drivers approved by Ethio-

---

[6] (Citations and punctuation omitted.) *Hays*, 314 Ga. App. at 111-112 (1).

[7] OCGA § 40-1-193.1 (c) (4). See also Ga. L. 2016, p. 767, § 2/SB 320.

[8] See *Southeastern Security Ins. Co. v. Empire Banking Co.*, 230 Ga. App. 755, 757 (3) (498 SE2d 282) (1998) (holding that coverage was excluded because insured failed to notify insurance company of all operators and household members as required).

9

American is clear and unambiguous, and thus, the trial court correctly granted summary judgment regarding Darden's claims against Ethio-American.[9]

2. Darden also argues that the trial court erred by granting summary judgment to Progressive. We agree.

(a) As an initial matter, the ride-sharing exclusion does not apply in this instance because Fandino was not engaged in ride-sharing activity at the time of the accident. He deposed that he had finished working for the day and was going to get breakfast before going home. Progressive's argument that he could have picked up another fare after breakfast is purely speculative, and it is undisputed that Fandino had no fare at that time. Thus, the accident did not occur "*while being used*: [A] to carry persons or property for compensation, fee, salary, or wages, . . . or [C] for ride-sharing activity"[10] and thus, this exclusion did not apply to exclude coverage in this incident.

---

[9] Cf. *Ison v. State Farm Fire & Cas. Co.*, 230 Ga. App. 554, 555 (496 SE2d 478) (1998) (holding that driver exclusions, "which are clear, unambiguous[,] and supported by consideration[,] are enforceable" and do not violate public policy or compulsory insurance laws).

[10] (Emphasis supplied.)

(b) The trial court also found (and Progressive also argues) that the Civic was not a covered automobile because the accident fell within the "regular use" exclusion — the exclusion of coverage for "bodily injury or property damage arising out of the ownership, maintenance[,] or use of any vehicle owned by you or furnished or available for your regular use, other than a covered auto for which this coverage has been purchased."[11] On the other hand, Darden argues that because Fandino's rental of the Civic from Phun began fewer than 30 days prior to the accident, the Civic was covered as an "additional auto"[12] under the policy and therefore was not excluded by the "regular use" exclusion. We agree.

The purpose of such a regular use provision is to allow for "occasional or incidental use of other cars without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurance

---

[11] See *Hays*, 314 Ga. App. at 111-112 (1); *Nghiem v. Allstate Ins. Co.*, 292 Ga. App. 588, 590 (664 SE2d 925) (2008) (discussing a regular-use exclusion).

[12] "Auto," is defined as "a land motor vehicle: a. of the private passenger, pickup body, or cargo van type; b. designed for operation principally upon public roads; c. with at least four wheels; and d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications. However, 'auto' does not include golf carts, step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area." There is no dispute that the Civic is an "auto."

company without a corresponding increase of the premium."[13] Thus, Fandino's use of the Civic normally would be excluded if he had daily use of the vehicle without also adding it to the policy. But in this case, the plain language of the "additional auto" clause of the policy allows for a 30-day time period during which the policy holder may acquire another automobile that would otherwise be excluded under the regular-use provision and have it insured to the same extent of the explicitly listed automobiles.

Progressive argues and the trial court found that the Civic did not qualify as an additional auto because Fandino did not "own" the Civic. "Own" is not defined in the Progressive policy.[14] The definition of owner is defined by Black's Law Dictionary as "[o]ne who has the right to possess, use, and convey something. . . ."[15] Under the

---

[13] (Punctuation omitted.) *Nghiem*, 292 Ga. App. at 590, quoting *Mattox v. Cotton States Mut. Ins. Co.*, 156 Ga. App. 655, 657 (275 SE2d 667) (1980).

[14] Part IV of the policy, which addresses "DAMAGE TO A VEHICLE," and addresses collision and comprehensive coverages, defines "Non-owned auto" as "an auto that is not owned by or furnished or available for the regular use of you, a relative, or a rated resident while in the custody of or being operated by you, a relative, or a rated resident with the permission of the owner of the auto or the person in lawful possession of the auto." Fandino's declaration page listed his coverage as "Liability to others."

[15] See Black's Law Dictionary, p. 508 (2nd pocket ed. 1996).

12

limited terms of the oral agreement between Phun and Fandino, Fandino paid Phun weekly for exclusive use and possession of the Civic. He could use it for personal and job related driving, and there is no evidence that another taxi driver could take the Civic from Fandino during the time period. Additionally, there is nothing in the limited terms of the oral agreement that prohibited Fandino from subleasing the Civic to another individual during the time period that he rented it from Phun. If "a term of a policy of insurance is susceptible to two or more reasonable constructions, and the resulting ambiguity cannot be resolved, the term will be strictly construed against the insurer as the drafter and in favor of the insured."[16] Although obviously limited, Fandino had at least some ownership interest in the Civic, which would have made the vehicle insurable by Fandino under the additional auto provision.[17] Thus, the Civic was not excluded by the regular-use exclusion because fewer than 30 days had elapsed since Fandino leased the Civic from Phun, and the trial court erred by finding

---

[16] *Hays*, 314 Ga. App. at 112 (1).

[17] See id. See also *James v. Penn. Gen. Ins. Co.*, 167 Ga. App. 427, 430-431 (2) (306 SE2d 422) (1983) (discussing the definition of owner under a policy).

otherwise.[18] Accordingly, we reverse the trial court's order granting summary judgment as to Progressive.

3. Based on the forgoing, we need not address Darden's arguments that the exclusions in either of the policies offend public policy as explained in *Federated Mut. Ins. Co. v. Dunton*.[19]

*Judgment affirmed in part and reversed in part. Reese, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[18] Compare *State Automobile Mut. Ins. Co. v. Todd*, 309 Ga. App. 213, 214-215 (1) (709 SE2d 565) (2011) (driver was excluded under the regular use provision because she had regularly used the owner's car for almost a year but was not added to the policy as an insured).

[19] 213 Ga. App. 148 (444 SE2d 123) (1994). See also *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 341-342 (2) (329 SE2d 136) (1985) ("[limiting] exclusion in issue is unenforceable as against public policy only to the extent of insurance required by our compulsory insurance law at the time of the collision").